ADVOCATE FINANCIAL, LLC, ET AL.                    CIVIL ACTION

VERSUS                                                              No. 09-1023

LEONARD CARDENAS, III, ET AL.                          SECTION I

### ORDER AND REASONS

Before the Court is a motion[1] filed by plaintiff, Louis M. Phillips, in his capacity as Chapter 11 trustee for the bankruptcy estate of Advocate Financial, L.L.C. (collectively "Advocate Financial"), for summary judgment on its claims against defendants, Leonard Cardenas, III and Leonard Cardenas, III, APLC (collectively "Cardenas" or "the Cardenas Firm").  Advocate Financial also seeks summary judgment in its favor with respect to the counterclaim filed by Cardenas.  Cardenas has filed an opposition to the motion for summary judgment.[2]  For the following reasons, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

### *BACKGROUND*

For more than six years, Leonard Cardenas, III financed his litigation practice as a plaintiff's attorney through his line of credit with Advocate Financial.[3]  Cardenas and Advocate Financial executed a Master Loan Facility Agreement on September 16, 2003, that set forth the

---

[1] R. Doc. No. 32.

[2] R. Doc. No. 33.

[3] R. Doc. No. 32-12, ¶1; R. Doc. No. 32-1,  ¶ 3.

Case 3:09-cv-01023-LMA-AC   Document 64   02/03/12   Page 1 of 17

original terms of their financing arrangement ("the 2003 Loan Agreement").[4]  Advocate
Financial agreed to fund the reasonable litigation expenses of Leonard Cardenas, III, APLC and
its clients by lending them up to $500,000.[5]  Cardenas agreed to immediately repay any loans
upon receiving payment for favorable judgments or settlements obtained on behalf of his clients.[6]
The loans were evidenced by promissory notes bearing one-year maturity dates that were
otherwise payable on demand.[7]  The line of credit afforded Cardenas the financial means to
"survive" and earn income as a plaintiff's attorney.[8]

On January 30, 2007,  Advocate Financial renegotiated the terms of its financing
arrangement with Cardenas and it insisted that he begin to make monthly interest payments on
the principal balance of his outstanding loans.[9] Although Cardenas agreed to the new

---

[4] R. Doc. No. 32-2; R. Doc. No. 32-1,  ¶ 4.

[5] R. Doc. No. 32-2, ¶ 3 ("Line of Credit Amount").

[6] R. Doc. No. 32-2, ¶5 ("Payment Out of Case Proceeds").

[7] R. Doc. No. 57-1, ¶¶ 1, 3; R. Doc. No. 32-2,¶ 5 ("Loan Renewal Eligibility").  The first promissory note signed by
Cardenas on October 14, 2003, pursuant to the 2003 Loan Agreement, provided as follows:

> **1. PROMISE TO PAY.  Leonard Cardenas III, a Law Corporation** ("Law
> Firm") promises to pay, on demand, or if no demand is made then as set forth in
> Section 3 below, to the order of **ADVOCATE FINANCIAL, L.L.C.,** a
> Louisiana limited liability company ("Lender"), the sum of **Seventy One
> Thousand Four Hundred Ninety Four Dollars and Seventy Three cents
> ($71, 494.73)**, or such other amounts as may be shown from time to time on the
> books and records of Lender as reflecting the aggregate unpaid principal balance
> of loan advances made to Law Firm under this Note, together with simple
> interest thereon at a rate of **Six percent (6%)** . . .

> **3. PAYMENT TERMS**.  Law Firm will pay in readily available funds the
> outstanding principal, accrued interest and unpaid fees (if any) of this Note on
> demand by lender; or if no demand is made, then in one payment on **October
> 14, 2004** (the "Maturity Date").

(emphasis in original). R. Doc. No. 57-1.

[8] R. Doc. No. 33, p. 2.

[9] R. Doc. No. 32-9;  R. Doc. No. 32-12, ¶ 10; R. Doc. No. 32-1, ¶ 7.

2

arrangement in order to maintain his line of credit, the substantial monthly interest payments eventually subsumed his litigation practice.[10] Cardenas testified during his deposition that there were months when he made interest payments "that were up to $17,000 or more when that was more than I needed to finance my cases."[11]

On February 4, 2008, in anticipation of billing Cardenas for the amounts of his unpaid interest, Advocate Financial agreed to defer payment of the accrued interest in exchange for the payment of a deferral fee.[12] Cardenas paid the deferral fee and the parties subsequently executed Amended and Restated Master Loan Facility Agreements that ultimately extended the maturity date on the line of credit to September 16, 2009.[13] However, Cardenas eventually fell into default with respect to several loan provisions including the requirement of monthly interest payments.[14]

On December 5, 2008, Advocate Financial sent Cardenas a letter agreement again offering to accept a deferral fee in lieu of the required payment for accrued interest.[15] Cardenas did not execute the letter agreement and he paid neither the deferral fee nor the accrued and unpaid interest.[16] Advocate Financial recounts that the parties then entered into negotiations to

---

[10] R. Doc. No. 33, pp. 4-6.

[11] R. Doc. No. 33-1, p. 125.

[12] R. Doc. No. 57, ¶ 12; R. Doc. No. 57-4.

[13] R. Doc. No. 57, ¶ 12; R. Doc. No. 57-4; R. Doc. No. 57, ¶¶ 12-14; R. Doc. No. 62 p. 2

[14] R. Doc. No. 57, ¶ 16.

[15] R. Doc. No. 57, ¶ 16; R. Doc. No. 57-8.

[16] R. Doc. No. 57, ¶ 16; R. Doc. No. 57-8; R. Doc. No. 62 p. 2.

amicably resolve Cardenas's default without it having to make demand for payment on the outstanding balance of the loans.[17]

On March 12, 2009, the parties reached an agreement and executed an Amended and Restated Master Loan Facility Agreement ("the 2009 Loan Agreement") that extended the maturity date of the line of credit until March 12, 2010.[18] The 2009 Loan Agreement expressly required that Cardenas make monthly interest payments and it provided that all loans would be payable on demand.[19] Cardenas contemporaneously borrowed $500,000 from Advocate Financial pursuant the 2009 Loan Agreement.[20] He signed an Amended and Restated Law Firm Revolver Promissory Note ("the 2009 Promissory Note"), payable on demand, bearing an interest rate of prime + 9.5%.[21] The loan was secured by various items of collateral pursuant to an Amended and Restated Law Firm Security Agreement ("the Security Agreement") signed by Cardenas.[22] Finally, both Cardenas and the Cardenas Firm guaranteed the Promissory Note by

---

[17] R. Doc. No. 57, ¶ 17.

[18] R. Doc. No. 36, pp. 11- 25; R. Doc. No. 32-12, ¶ 2; R. Doc. No. 57, ¶ 18.

[19] R. Doc. No. 36, p. 14 ("Repayment" and "Interest Payment"); R. Doc. No. 32-12, ¶¶ 5-6.

[20] R. Doc. No. 32-3; R. Doc. No. 32-12, ¶ 4; R. Doc. No. 32-1, ¶ 4.

[21] R. Doc. No. 32-3; R. Doc. No. 32-12, ¶ 4; R. Doc. No. 32-1, ¶ 4.

[22] R. Doc. No. 32-4; R. Doc. No. 32-1, ¶ 4. The Security Agreement granted a continuing security interest in favor of Advocate Financial to secure "any and all present and future Indebtedness of Grantor in favor of Lender, as may be outstanding from time to time . . . ." R. Doc. No. 32-4, ¶ 4. Advocate Financial perfected its security interest in the collateral by filing and recording a UCC-1 financing statement on October 23, 2008. R. Doc. No. 32-5; R. Doc. No. 32-12, ¶ 13; R. Doc. No. 32-1, ¶ 4. The Security Agreement covered the following items of collateral:

> (1) attorney's fees; (2) reimbursements of litigation costs and expenses advanced and incurred by Grantor on a Client's behalf; (3) reimbursements of living expenses advanced or funded by Grantor to a Client or on a Client's behalf, and Income and Proceeds in connection with Grantor's legal representation of any and all past, present and future Clients, whether now due or to become due, whether pursuant to an attorney-client contract or other agreement, any extension or amendment thereto, or pursuant to any law of privilege or otherwise, whether from a named party in the Case or other person or entity on a

4

executing an Individual Guarantee Agreement and a Law Firm Guarantee Agreement, respectively.[23]

On November 18, 2009, Advocate Financial made formal demand upon Cardenas to make payment in full on the unpaid balance of the 2009 Promissory Note, plus all accrued interest.[24] Advocate Financial alleges that Cardenas failed to make payment in accordance with the terms of the 2009 Loan Agreement and it filed this lawsuit seeking a money judgment against Cardenas for amounts owed on the 2009 Promissory Note plus interest, penalties, and attorney's fees.[25] Advocate Financial also seeks a judgment recognizing its security interest in the various items of collateral set forth in the Security Agreement.[26]

Cardenas responds that Advocate Financial coerced him into signing the 2009 Loan Agreement and the 2009 Promissory Note in a "desperate effort to accelerate receipt of loaned finds [sic] to avoid bankruptcy."[27] Cardenas argues that he signed the contracts under duress in order to maintain his line of credit, which he claims was critical "in the lifeline and bloodline" of his business.[28] Cardenas contends that his fear of economic deprivation constituted duress and that Advocate Financial's conduct constituted coercion and civil extortion that vitiated his

---

named party's behalf, and whether in satisfaction of a full or partial judgment or full or partial settlement of a Case.

[23] R. Doc. No. 32-6; R. Doc. No. 32-7; R. Doc. No. 32-12, ¶¶ 14-19; R. Doc. No. 32-1, ¶ 4.

[24] R. Doc. No. 32-10; R. Doc. No. 32-12, ¶ 20; R. Doc. No. 32-1, ¶ 8.

[25] R. Doc. No. 1.

[26] R. Doc. No. 1.

[27] R. Doc. No. 33, p. 1; R. Doc. No. 33-2, ¶ 8.

[28] R. Doc. No. 33, pp. 4-6.

Case 3:09-cv-01023-LMA-AC   Document 64   02/03/12   Page 5 of 17

consent to the terms of the 2009 Loan Agreement.[29]  Cardenas filed a counterclaim seeking an

unliquidated sum of damages for Advocate Financial's alleged breach of the original contract.[30]

On May 5, 2011, Advocate Financial filed this motion seeking summary judgment on its

claims against Cardenas with respect to the 2009 Loan Agreement and the 2009 Promissory

Note.[31]  Advocate Financial also seeks summary judgment with respect to Cardenas's

counterclaim for breach of contract damages.[32]  Although Cardenas does not dispute the amount

of his indebtedness, the validity of the Security Agreement, or that he and/or the Cardenas Firm

executed the 2009 Loan Agreement and its accompanying loan documents, he argues that a

genuine issue of material fact exists as to his subjective frame of mind when Advocate Financial

allegedly coerced him to renegotiate the terms of the 2003 Loan Agreement.[33]

## *LAW*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and

disclosure materials on file, and any affidavits," the court determines there is no genuine issue of

material fact. Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the

initial responsibility of informing the court of the basis for its motion and identifying those

portions of the record that it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need

not produce evidence negating the existence of material fact, but need only point out the absence

---

[29] R. Doc. No. 33, pp. 4-6; R. Doc. No. 33-1, ¶¶ 4-9.

[30] R. Doc. No. 8.

[31] R. Doc. No. 32.

[32] R. Doc. No. 32.

[33] R. Doc. No. 33.

6

of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotation and citation omitted) (alteration in original).

In a nonjury case, the Fifth Circuit has suggested, but not explicitly adopted, a "more lenient standard for summary judgment." *U.S. Fid. & Guar. Co. v. Plantars Bank & Trust Co.*, 77 F.3d 863, 865 (5th Cir. 1996). The Fifth Circuit has stated that "where the judge is the trier of fact . . . he may be in a position to draw inferences without resort to the expense of trial, unless there is an issue of witness credibility." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 273 n. 15 (5th Cir. 1987) (quoting *Ala. Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609-10 (5th Cir. 1979)).

### DISCUSSION

### I. Advocate Financial's Right to Enforce the 2009 Promissory Note

#### A. The 2009 Promissory Note

Summary judgment is the appropriate procedural device to enforce a negotiable instrument when the debtor establishes no defense against enforcement. *Am. Bank v. Saxena*, 553 So. 2d 836 (La. 1989); *Lloyd v. Lawrence*, 472 F.2d 313, 316 (5th Cir. 1973). "A negotiable instrument must (a) be signed by the maker or drawer; and (b) contain an unconditional promise to pay a sum certain in money; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer." *Saxena*, 553 So. 2d at 842 (citing La. R.S. 10:3–104). "Once the plaintiff, the holder of a promissory note, proves the maker's signature, or the maker admits it, the holder has made out his case by mere production of the note and is entitled to recover in the absence of any further evidence." *Premier Bank, Nat'l. Ass'n v. Percomex, Inc.*, 615 So. 2d 41, 43 (La. Ct. App. 3d Cir. 1993) (citing *Thomas v. Bryant*, 597 So. 2d 1065 (La. Ct. App. 2d Cir. 1992)). The burden then shifts to the defendant to prove the existence of a valid defense to liability on the note. *Premier Bank*, 615 So. 2d at 43.

Advocate Financial has carried its initial burden of establishing that it is a holder with the right to enforce the 2009 Promissory Note. Advocate Financial produced a copy of the note that was signed by Cardenas on behalf of the Cardenas Firm.[34] The note contains an unconditional promise to pay a sum certain in money to the order of Advocate Financial.[35] It is payable on demand.[36] Louis M. Phillips provided a sworn declaration on behalf of Advocate Financial attesting to the authenticity of the 2009 Promissory Note and Cardenas did not specifically deny

---

[34] R. Doc. No. 32-3.

[35] R. Doc. No. 32-3.

[36] R. Doc. No. 32-3.

Case 3:09-cv-01023-LMA-AC   Document 64   02/03/12   Page 8 of 17

that his signature appears on the instrument in either his answer or in his opposition to the motion for summary judgment.[37]  It is also undisputed that Cardenas received money pursuant to the 2009 Promissory Note, pledged collateral pursuant to the Security Agreement, and that he failed to make payment upon demand.[38]  Accordingly, Advocate Financial is entitled to enforce the 2009 Promissory Note unless Cardenas can establish a valid defense to liability.

### B.  Duress

Cardenas argues that Advocate Financial coerced him into signing the 2009 Loan Agreement and the 2009 Promissory Note under duress by threatening to cut off his line of credit and to immediately make demand for payment on the full amount of the loans.[39] Cardenas argues

---

[37] R. Doc. No. 32-1, ¶¶ 4-6.; R. Doc. No. 8; R. Doc. No. 33.

[38] R. Doc. No. 32-12, ¶¶ 20-22.

[39] In his deposition, Cardenas testified that "it was done nicely by Marilyn saying, 'Look, I've got pressure on me. We've got demands on us, and we got to start showing some good-faith payment; 'cause otherwise, they're gonna cut you off.'" R. Doc. No. 33-1, p.134.  Cardenas further described the alleged coercion as follows:

> A.      The Coercion was, "If you don't sign this document, we're gonna take," you know, "your lifeline away from you" -- which is the funding -- "and we're gonna" -- you know, "and then you're on your own."
>
> And I didn't have the cash flow at that time.  While maybe at other times in my career I've had the cash flow and maybe survived longer and be able to cover the difference, at this point in time and the last couple of years I have not, certainly.
>
> And so that was the coercion.  They knew that I needed the funding; and if I wanted to receive the funding, I needed to sign the documents.
> . . .
>
> Q.      MR. FRY:  And let's be -- let's be real clear.  It was part of the confer- -- the coercion.  Were there two components?  Was it "They're gonna" -- "They're gonna pull my lifeline in the future and they're gonna call the loan," or was it --
>
> THE WITNESS:  Both
>
> MR. FRY:  Okay.

9

that a genuine issue of material fact exists as to his subjective frame of mind when Advocate Financial required him to sign the new agreements.[40]

Under Louisiana law, "Duress results when 'a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent.'" *Reimonenq v. Foti*, 72 F.3d 472, 478 (5th Cir. 1996) (citing La. Civ. Code art. 1959, official comment (b)). Louisiana Civil Code Article 1959 provides that:

> Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear.

"'The result of this type of duress is that the contract that is created is voidable by the victim.'" *Wolf v. La. State Racing Comm'n*, 545 So. 2d 976, 980 (La. 1989) (quoting La. Civ. Code art. 1959, official comment (b)). "The party seeking to avoid the contract bears the burden of proof by a preponderance of the evidence to support its claim of duress." *Dalleo v. River Const., Inc.*, No. 01-2397, 2003 WL 548928, at *3 (E.D. La. Feb. 20, 2003) (Berrigan, J.) (citing La. Civ. Code art. 1831; *Dugas v. Modular Quarters, Inc.*, 561 So. 2d 192, 201 (La. Ct. App. 3d Cir. 1990)); *Saxena*, 553 So. 2d at 842.

"Although a threat of doing a lawful act or a threat of exercising a right does not

---

> A.     Obviously they're not -- not only are they gonna -- they gonna cut off the line of credit, but they're gonna call the loan and say, "You owe me," you know, "400,000 or 500,000. Pay it now" -- which I couldn't do either.
>
>        So that -- they were threatening to put me out of business, so -- so I signed, expecting them to honor their end of the bargain, which was continuing to provide me the line -- line of credit; which they did not do even -- even after I continued to make monthly payments.

R. Doc. No. 33-1, pp. 135-38.

[40] R. Doc. No. 33.

10

constitute duress, a threat of doing an act that is lawful in appearance only may constitute duress." *Wolf*, 545 So. 2d at 981 (citing La. Civ. Code. art. 1962). However, neither financial strait nor the mere stress of business conditions constitute economic duress if the opposing party did not engage in conduct designed to produce that stress. *See Pellerin Const., Inc. v. Witco Corp.*, 169 F. Supp. 2d 568, 579 (E.D. La. 2001) (Vance, J.); *Keybank Nat'l Ass'n v. Perkins Rowe Ass's*, No. 09-497, 2011 WL 3444301, at *4 (M.D. La. Aug. 8, 2011) (Brady, J.); *Aubert v. Entergy Corp.*, 762 So. 2d 288, 291 (La. Ct. App. 5th Cir. 2000); *Comeaux v. Entergy Corp.*, 734 So. 2d 105, 107 (La. App. 5th Cir. 1999); *Utley-James of La., Inc. v. La. Dep't. of Facility Planning & Control*, 593 So. 2d 1261, 1267-68 (La. Ct. App. 1st Cir. 1991); *Shepherd v. Allstate Ins. Co.*, 562 So. 2d 1099, 1101 (La. Ct. App. 4th Cir. 1990).

The evidence submitted in support of this motion for summary judgment firmly establishes that Advocate Financial had a legal right at all times to demand payment and/or to refuse to provide any further loans to the Cardenas firm. From the outset of their relationship, the promissory notes signed by Cardenas in connection with their loan agreements stated that the notes were payable on demand.[41] The loan agreements further provided that Advocate Financial retained sole discretion to renew the line of credit and that it was under no obligation to approve draws or disburse funds under the loan facilities.[42] It is also undisputed that Cardenas was in

---

[41] R. Doc. No. 57.

[42] The 2003 Loan Agreement specifically provided:

> **6. DRAWS AT LENDER'S DISCRETION.** Law Firm acknowledges and agrees that no provision hereof, and no course of dealing by Lender in connection herewith, shall be deemed to create or shall imply the existence of any commitment or obligation on the part of Lender to disburse funds under either Loan Facility; any and all draws under the Loan Facilities and under each Note shall be at the sole and absolute discretion of Lender.

R. Doc. No. 32-2. The 2009 Loan Agreement contained a nearly identical provision entitled "Funding at Lender's Discretion." R. Doc. No. 36, p. 17.

11

default of several loan provisions including the monthly interest payment requirement when Advocate Financial entered into the negotiations leading up to the 2009 Loan Agreement and 2009 Promissory Note.[43] The fact that Advocate Financial may have "threatened" to enforce its rights under their contracts unless Cardenas agreed to the terms and conditions of the 2009 Loan Agreement does not amount to duress as it is merely "a threat of doing a lawful act or a threat of exercising a right [that] does not constitute duress." La. Civ. Code art. 1962; *see also Fed. Sav. & Loan Ins. Corp. v. Ziegler*, 680 F. Supp. 235, 237-38 (E.D. La. 1988) (McNamara, J.).

The Court need not consider Cardenas's subjective fear of economic deprivation in determining that his claim of duress fails as a matter of law. Although Cardenas argues that a genuine issue of material facts exists with respect to his fear of economic deprivation, *see Conrad v. Doe*, 545 So. 2d 677, 679-81 (La. Ct. App. 5th Cir. 1989); *Wolf*, 545 So. 2d at 981, Cardenas has failed to establish that Advocate Financial engaged in conduct designed to produce his economic hardship. Despite his claim that Advocate Financial imposed monthly interest payments on him in a desperate effort to avoid bankruptcy, Cardenas has not demonstrated that Advocate Financial used the monthly interest payments to put him "in extremis, so that they could thereafter make unjustified demands on [him]." *See Pellerin*, 169 F. Supp. 2d at 580. While he ultimately found himself unable to sustain the monthly interest payments, and while he may have felt compelled to agree to the terms of the 2009 Loan Agreement, the Louisiana appellate courts have made clear that a claim of financial straits and/or the stress of business conditions does not amount to economic duress. *See Aubert*, 762 So. 2d at 291; *Comeaux*, 734 So. 2d at 107; *Utley-James*, 593 So. 2d at 1267-68. Accordingly, the Court finds that there are

---

[43] R. Doc. No. 57.

Case 3:09-cv-01023-LMA-AC   Document 64   02/03/12   Page 12 of 17

no genuine issues of material fact and that Advocate Financial is entitled to enforce the 2009 Promissory Note as a matter of law.

## II. Cardenas's Counterclaim for Breach of Contract

Cardenas filed a counterclaim to recover damages with respect to Advocate Financial's alleged breach of the 2003 Loan Agreement and its oral agreement to continue funding his litigation practice.[44] Cardenas claims that Advocate Financial's failure to fund his cases prevented him from "moving cases as quickly as they otherwise could and preventing the settlement of cases as quickly and expeditiously as such financing allowed . . . ."[45] Cardenas seeks breach of contract damages for his loss of attorney's fees along with interest and costs.[46]

Although Cardenas argues that the terms of the 2003 Loan Agreement controlled the parties' contractual obligations, the 2003 Loan Agreement was amended and restated several times before it finally took the form of the 2009 Loan Agreement. The 2009 Loan Agreement specifically provided:

> **Amendment and Restatement.** Law Firm hereby acknowledges and agrees that this Agreement is an amendment and restatement, and is given in rearrangement and extension, of that certain Master Loan Facility Agreement executed by and between Law Firm and Lender and dated September 16, 2003 (as the same may have been amended from time to time, the "Original Loan Agreement"), and does not constitute a novation or discharge of the Original Loan Agreement or any indebtedness evidenced thereby.

Having determined that Cardenas's consent to the 2009 Loan Agreement was not vitiated by economic duress, there can be no dispute that the 2009 Loan Agreement was the controlling

---

[44] R. Doc. No. 8, pp. 6-7.

[45] R. Doc. No. 8, p. 7.

[46] R. Doc. No. 8, p. 7.

Case 3:09-cv-01023-LMA-AC   Document 64   02/03/12   Page 13 of 17

document.  As previously explained, however, Advocate Financial was under no continuing obligation to fund Cardenas's litigation practice under the terms of either the 2003 Loan Agreement or the 2009 Loan Agreement.[47]  Accordingly, Cardenas cannot recover damages with respect to his claim that Advocate Financial breached the 2003 Loan Agreement.

To the extent that Cardenas claims Advocate Financial breached an oral agreement to continue funding his litigation practice, such claims are barred by the Louisiana Credit Agreement Statute.  La. Rev. Stat. Ann. § 6:1122 provides, "A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." The statute defines "credit agreement" as a "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation."  La. Rev. Stat. Ann. § 6:1121(1).  A "creditor" is defined as "a financial institution or any other type of creditor that extends credit or extends a financial accommodation under a credit agreement with a debtor." La. Rev. Stat. Ann. § 6:1121(2).  The statute defines a "debtor" as "a person or entity that obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor." La. Rev. Stat. Ann. § 6:1121(3). "[T]he primary purpose of credit agreement statutes is to discourage borrowers from asserting causes of action against lenders based upon oral agreements to lend money, to forbear or [to make] other financial accommodations." *King v. Parish National Bank*, 885 So. 2d 540, 549 (La. 2004) (citing *Jesco Const. Corp. v. Nationsbank Corp.*, 830 So. 2d 989, 992 (La. 2002).

In this case, Cardenas is a "debtor," Advocate Financial is a "creditor," and the alleged oral agreement to continue funding Cardenas's cases falls within the definition of a "credit

---

[47] *See supra* note 42.

agreement" as "an agreement to lend . . . money . . . or to make any other financial accommodation." *See Whitney Nat'l Bank v. Rockwell*, 661 So. 2d 1325, 1331-33 (La. 1995) ("[T]he Bank's alleged breach of the oral agreement by demanding payment in full, in accordance with the terms of the note, is exactly the situation that the Legislature contemplated in enacting the credit agreement statute."); *see also Becker v. First Am. Bank*, 420 N.W.2d 239 (Minn. Ct. App. 1988) (holding that an alleged oral agreement to continue financing the borrower's business if the business sold some of its assets was an agreement to lend and therefore a credit agreement under the statute) (cited in *Whitney Nat'l Bank*, 661 So. 2d at 1330). Such oral agreements cannot be enforced in an action or counterclaim for damages. La. Rev. Stat. Ann. § 6:1122. Accordingly, the Court finds that Advocate Financial is entitled to summary judgment in its favor with respect to Cardenas's counterclaim for breach of contract damages.

## III. Attorney's Fees

The United States Supreme Court has noted that "[t]he rule here [in the United States] has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S. Ct. 1404, 1407, 18 L. Ed. 2d 475 (1967); *Sierra Club v. Lynn,* 502 F.2d 43, 64 (5th Cir. 1974). "Attorney fees are not allowable in an action for breach of contract unless there is a specific provision therefor in the contract." *Hollenshead Oil & Gas, LLC v. Gemini Explorations, Inc.*, 44 So. 3d 809, 817 (La. Ct. App. 2d Cir. 2010) (citing *Maloney v. Oak Builders, Inc.*, 256 La. 85, 235 So. 2d 386, 390 (La. 1970) (explaining that contractual fee-shifting provisions are "neither against public policy, nor good morals"). "A breach of contract action does not fall within one of the limited exceptions to the general rule; if the parties fail to

15

expressly provide an obligation to pay attorney's fees, the law will not imply one." *Homestead*

*Ins. Co. v. Guar. Mut. Life Co.*, No. 10-31099, 2012 WL 245237, at *5 (5th Cir. Jan. 26, 2012).

The 2009 Promissory Note contains a specific provision for an award of attorney's fees incurred to collect amounts due under the note.[48]  Paragraph eleven of the 2009 Promissory Note provides:

> **11.  ATTORNEY'S FEES.**  If Lender refers this Note to an attorney for collection or files suit against Law Firm to collect any amounts due under this note, or if Law Firm files for bankruptcy or other relief from creditors, Law Firm agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding twenty-five percent (25%) of the unpaid Indebtedness then owing under this Note.[49]

Although it may be entitled to collect its attorney's fees in accordance with this provision, Advocate Financial submitted no evidence establishing either the amount or the reasonableness of any attorney's fees it may have incurred in its effort to collect amounts due under the note. Accordingly, the Court finds that Advocate Financial is not entitled to summary judgment with respect to its claim for attorney's fees.

### *CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED** with respect to Advocate Financial's claims to enforce the 2009 Promissory Note and the Security Agreement.

**IT IS FURTHER ORDERED** that the motion for summary judgment is **GRANTED** with respect to Cardenas's counterclaim for breach of contract.  Cardenas's counterclaim is **DISMISSED WITH PREJUDICE**.

---

[48] R. Doc. No. 32-3, ¶ 11.

[49] R. Doc. No. 32-3, ¶ 11.

**IT IS FURTHER ORDERED** that the motion is **DENIED** to the extent that Advocate

Financial seeks summary judgment with respect to its claim for attorney's fees.


New Orleans, Louisiana, February 3, 2012.


**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**